NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 3 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| BARRY ROSEN, | No. 18-56059 |
| Plaintiff-Appellant, | D.C. No. 2:17-cv-07727-PSG-JEM |
| v. | |
| UNITED STATES GOVERNMENT; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Submitted December 13, 2019**
Pasadena, California

Before: BOGGS,*** WARDLAW, and BEA, Circuit Judges.

Barry Rosen appeals the district court's dismissal of this action for lack of

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\* The Honorable Danny J. Boggs, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

standing. Rosen is a pilot, a pro se plaintiff,[1] and a serial litigant who is asking that the federal courts invalidate a consent decree entered in a different case between the City of Santa Monica and the United States Government concerning the Santa Monica Airport ("SMO"). SMO was transferred to the federal government during World War II, then back to the City under the Surplus Property Act, with conditions that may or may not still be valid regarding its continuing use as an airport. Since the beginning of the jet age, the City has been seeking to close the airport, which has resulted in multiple lawsuits and settlements between the City and the federal government. The most recent of these ended in a 2017 consent decree, under which the City may shorten the runway immediately and must keep the airport open until 2028, but is free thereafter to close it. The case leading to the consent decree has drawn proper intervenors (whose claims have been rejected) and collateral challenges (thus far also unsuccessful, though litigation continues).

Rosen did not move to intervene in that litigation. Rather, in a separate series of complaints (four so far, with a pending request to reverse the district court's denial of leave to file a fifth), Rosen asked the district court to void not only the consent decree but also an expired 1984 agreement between the same parties and to require the federal government to take over the airport or bring in a third party to

---

[1] Rosen filed his Opening Brief in this case pro se, but has counsel listed on his Reply Brief.

administer it. The district court held that Rosen did not have standing on several grounds, granted defendants' Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, and also concluded that Rosen's motion for partial summary judgment was moot. Rosen now appeals, and we affirm.[2]

**1.** Rosen lacks standing. To begin with, he cannot satisfy the requirement of redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018). Were we to void the consent decree, the City and federal government would be back to the status quo ante, under which the government at most has the option to take over the airport, while the City would be litigating to close it immediately. "To establish redressability, a plaintiff must show that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *M.S.*, 902 F.3d at 1083, *quoting Lujan*, 504 U.S. at 561. This case does not clear that bar. Moreover, Rosen's complaint about the 1984 agreement between the federal government and the City is not redressable, as that agreement expired in 2015. *See Caldwell v. Caldwell*, 545 F.3d 1126, 1130 (9th Cir. 2008).

When it comes to his challenges to the current litigation and consent decree, Rosen confuses practical redressability with legal redressability, arguing that recent construction shortening the runway pursuant to the consent decree is

---

[2] We deny Rosen's motion for summary disposition as moot.

3

reversible. But the issue is not whether the actions he proposes can *physically* be taken. Rather, the question is the legal rights of the City and federal government. Even if the district court did what Rosen proposes—voiding the 2017 consent decree—the parties would have many options to act in ways that would not redress Rosen's grievances.

Finally, while Rosen urges the court to mandate enforcement of a wide variety of statutes and regulations, which the federal government has allegedly neglected with respect to Santa Monica and SMO, it is an elementary point of law that individual enforcement decisions are discretionary and non-reviewable. *See, e.g.*, *Friends of Cowlitz v. FERC*, 253 F.3d 1161, 1170 (9th Cir. 2001), *amended in non-relevant part*, 282 F.3d 609. Thus, these claims also are fatally flawed for want of redressability.

**2.** Nor does Rosen assert sufficiently imminent injury, with respect to many of his claims, to have standing. "A plaintiff has sustained an injury in fact only if [he] can establish "an invasion of a legally protected interest which is . . . actual or imminent, not conjectural or hypothetical." *Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1098 (9th Cir. 2017) (quoting *Lujan*, 504 U.S. at 560. Most of the harms Rosen complains about would not happen, if at all, until after 2028. "[A] claim is not ripe for adjudication if it rests upon contingent future

events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (cleaned up).

**3.** Furthermore, Rosen has not made out an injury-in-fact. Thus far, his most specific and plausible allegation—contained in the proposed Fourth Amended Complaint, which he was never given leave to file—is that the shortening of the runway that was allowed immediately under the consent decree has caused him to have to perform go-arounds as well as to rent hangar space elsewhere during construction. Even in this unfiled complaint, Rosen does not provide sufficient factual details to make these more than conclusory statements that do not suffice to provide standing. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 682–83 (2009). Rosen's previous complaints offered even less in the way of plausible detail. And even if Rosen in theory could provide more detail, the district court was within its discretion in denying him leave to amend a fifth time. *See Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002). His other allegations of injury-in-fact fail as being insufficiently concrete and particularized. *See Lujan*, 504 U.S. at 560.

**4.** Rosen's attempts to bring the case under the private-attorney-general doctrine fail because even if there were statutory authority to bring such claims— which there is not—he still would have to show Article III standing in his own right, which he cannot. *See Gee v. American Nat. Ins. Co.*, 260 F.3d 997, 1001–02 (9th Cir. 2001).

**5.** As standing is a threshold requirement, and as Rosen lacks it, we do not consider his other grounds for appeal.

**AFFIRMED**.